UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| DAVID PHILLIPS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. V-03-38 |
| | § | |
| CITY OF VICTORIA, VANCE RILEY | § | |
| and DENNY ARNOLD, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM & ORDER

Pending before the Court is Defendant Vance Riley's ( "Riley") Motion for Summary

Judgment (Dkt. #29).  Upon reviewing the motion, the response, and the record, the Court is of

the opinion that Riley's motion should be DENIED.

### Factual and Procedural Background

Plaintiff David Phillips ("Phillips") filed this civil rights action pursuant to 42 U.S.C. § 1983

against Riley, the Chief of the City of Victoria Fire Department, the City of Victoria, Texas (the

"City") and the City Manager, Denny Arnold ("Arnold") alleging that Riley suspended Phillips'

employment with the fire department in retaliation for his association with a labor organization, the

Victoria Fire Fighters Association ("VFFA" or "Union") and speech on behalf of that organization

against Riley.  Pursuant to the parties' Stipulation of Dismissal of Denny Arnold (Dkt. #31), the

Court dismissed all claims against Arnold on March 16, 2004.  Thus, the only remaining defendants

are the City of Victoria and Riley.

Phillips worked for the Victoria Fire Department ("Fire Department") for ten years.  Prior

to his termination on February 6, 2003, he had received very favorable job performance evaluations.

Around 1995, some firefighters employed by the City formed the VFFA, International Association

of Fire Fighters Local 3629.  In January 1999, Phillips was elected president of the VFFA.  On April

13 and May 16, 2000, Phillips, in his capacity as VFFA president, attempted to have the City hear

a grievance filed against Riley.  After the City refused to hear the grievance, the VFFA filed suit to

enforce the rights of the Union's affected members under Texas law to file a grievance and to be

represented by the VFFA.[1]  Phillips served as the VFFA's spokesman in this lawsuit.  On December

19, 2001, the Honorable W.W. Kilgore, Judge of the 267th District Court of Victoria County held

a hearing on a motion for summary judgment filed by the VFFA.  Phillips alleges that at the

conclusion of that hearing the City attorney told VFFA counsel that Phillips and the VFFA "had

better watch what they were doing because they did not know what they were getting into."  On

December 21, 2001, Judge Kilgore entered partial summary judgment for the VFFA against the City

and ordered it to grant the VFFA a grievance hearing.

On the afternoon and evening of September 28, 2002, Phillips was involved in a single-

vehicle accident while off-duty.  Local emergency workers responded to the accident and

transported Phillips to Citizens Hospital.  Later accounts of the accident indicate that Phillips had

consumed a sufficient quantity of beer to become intoxicated under Texas law prior to the accident.

Within an hour after the collision, a blood test conducted at Citizens Hospital established that

Phillips' blood alcohol level was .228 gm/dl.  The legal limit for operating a motor vehicle in Texas

is .08 gm/dl.[2]

After a police investigation, Phillips was charged with driving while intoxicated ("DWI").

Upon learning of the charges, Riley precluded Phillips from driving any City vehicles pending a

---

[1] TEX. GOV. CODE ANN. § 617.005 (Vernon 2004).

[2] TEX. PENAL CODE ANN. § 49.01 (Vernon 2003).

determination of whether he had in fact been driving while intoxicated.

During the week of January 2, 2003, pursuant to a plea agreement, Phillips pleaded guilty to reckless driving and public intoxication.  On February 6, 2003, Riley suspended Phillips' driving permit indefinitely.  Phillips appealed this decision through the City's grievance process.  The appeal was denied by the Assistant City Manager Charles Windwehen and then again by the City Manager, Arnold.  Phillips remains on leave of absence status to date.

Phillips filed the current lawsuit on April 10, 2003.  Phillips alleges that Riley, in his capacity as a policy-making officer of the City, discharged him in retaliation for his membership in the VFFA.  Phillips argues that this was done in violation of his constitutional rights of freedom of speech and association.

### Summary Judgment Standard

Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56(c); *see also Christopher Village, LP v. Retsinas*, 190 F.3d 310, 314 (5th Cir. 1999).  The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment, there must be an absence of any genuine issue of material fact.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  An issue is "material" if its resolution could affect the outcome of the action.  *Daniels v. City of Arlington, Tex.*, 246 F.3d 500, 502 (5th Cir. 2001), *cert. denied*, 122 S. Ct. 347 (2001).

The moving party bears the initial burden of informing the court of all evidence demonstrating the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S.

317, 323 (1986).  Only when the moving party has discharged this initial burden does the burden

shift to the non-moving party to demonstrate that there is a genuine issue of material fact.  *Id.* at 322.

If the moving party fails to meet this burden, then they are not entitled to summary judgment and

no defense to the motion is required.  *Id.*

"For any matter on which the non-movant would bear the burden of proof at trial . . . , the

movant may merely point to the absence of evidence and thereby shift to the non-movant the burden

of demonstrating by competent summary judgment proof that there is an issue of material fact

warranting trial."  *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 718-19 (5th Cir. 1995); *see also*

*Celotex*, 477 U.S. at 323-25.  To prevent summary judgment, the non-movant must "respond by

setting forth specific facts" that indicate a genuine issue of material fact.  *Rushing v. Kansas City*

*S. Ry. Co.*, 185 F.3d 496, 505 (5th Cir. 1999).

When considering a motion for summary judgment, the court must view the evidence in the

light most favorable to the non-movant and draw all reasonable inferences in favor of the

non-movant.  *See Yaquinto v. Segerstrom* (*In re Segerstrom*), 247 F.3d 218, 223 (5th Cir. 2001); *see*

*also Samuel v. Holmes*, 138 F.3d 173, 176 (5th Cir. 1998).  The court must review all of the

evidence in the record, but make no credibility determinations or weigh any evidence, disregard all

evidence favorable to the moving party that the jury is not required to believe, and give credence to

the evidence favoring the non-moving party as well as to the evidence supporting the moving party

that is uncontradicted and unimpeached.  *Willis v. Moore Indep. Sch. Dist.*, 233 F.3d 871, 874 (5th

Cir. 2000).  However, the non-movant cannot avoid summary judgment simply by presenting

"conclusory allegations and denials, speculation, improbable inferences, unsubstantiated assertions,

and legalistic argumentation."  *See TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th

Cir. 2002); *see also Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

## Discussion

**I.      Retaliation Claim**

42 U.S.C. § 1983 creates a private cause of action for violations of Constitutional rights

perpetrated by any person acting under color of State law.[3]  Phillips alleges that his Constitutional

rights of free speech and association were violated when Riley suspended him in retaliation for

associating with a union and speaking out publicly against Riley.  A plaintiff must establish four

elements to recover for a First Amendment retaliation claim under § 1983:

> First, the Plaintiffs must suffer an adverse employment decision. See *Harrington v. Harris*, 118 F.3d 359, 365 (5th Cir.1997). Second, the Plaintiffs' speech must involve a matter of public concern. See *Thompson v. City of Starkville*, 901 F.2d 456, 460 (5th Cir.1990) (citing *Connick v. Myers*, 461 U.S. 138, 147, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). Third, the Plaintiffs' interest in commenting on matters of public concern must outweigh the Defendants' interest in promoting efficiency. *Id.* (citing *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968)). Fourth, the Plaintiffs' speech must have motivated the Defendants' action. *Id.* (citing *Mt. Healthy City School Dist. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977)).

*Harris v. Victoria Independent School District*, 168 F.3d 216, 220 (5th Cir. 1999).

---

[3] 42 U.S.C. § 1983:
Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

Riley does not dispute the fact that Phillips suffered an adverse employment action.[4]  Similarly,

Riley does not dispute that the First Amendment "protects a public employee's right to associate

with a union." *Hitt v. Connell*, 301 F.3d 240, 245 (5th Cir. 2002).[5]  Riley does, however, contend

that Phillips has failed to identify speech involving a matter of public concern.  Phillips argues that

the "letter of no confidence" grievance he filed in his capacity as VFFA president was speech

involving a matter of public concern.  The grievance sought the removal of Riley for "reckless,

dangerous, and hazardous decisions and judgments in the delivery of the Fire Department's services

to the public, with regard to the safety and well-being of the public and the department's personnel

involved in the activities of the fire service."[6]  Phillips contends that "the fighting of fires, and the

safety of firefighters in the execution thereof, is a matter of public concern."[7] The Court agrees.

"Whether an employee's speech addresses a matter of public concern must be determined by the

content, form, and context of a given statement, as revealed by the whole record." *Connick v. Myers*,

461 U.S. 138, 147-48 (1983).  It is well-settled law that the "ability of the Fire Department to

respond quickly and effectively to a fire" is a matter of public concern.  *Moore v. City of Kilgore*,

---

[4] *See* Defendant Riley's Memorandum of Law in Support of His Motion for Summary Judgment (Dkt. #30) ("Memorandum"), pg. 4 ("There is no question but that Phillips suffered an adverse employment action because his driving privileges were suspended, thereby suspending his employment with the City of Victoria Fire Department.").

[5] The Court notes that a plaintiff's proof of associational activity protected by the First Amendment "need not include independent proof that it touched a matter of public concern." *Boddie v. City of Columbus, Mississippi*, 989 F.2d 745, 747 (5th Cir. 1993). The other three elements of the test articulated in *Harris v. Victoria Independent School District* are the same for claims sounding in the free speech or free association clauses of the First Amendment.

[6] Plaintiff's Opposition to Defendant Vance Riley's Motion for Summary Judgment (Dkt. #47) ("Response"), Exhibit G, Grievance of April 13, 2000.

[7] Dkt. #47, p.14.

877 F.2d 364, 370 (5th Cir. 1989). Although Riley attempts to suggest that the "letter of no confidence" was speech of purely private concern, there is no evidence that Phillips' speech was merely an employment-related squabble between an employee and his supervisor.  The grievance was filed publicly with city authorities on behalf of a labor organization. Such speech cannot reasonably be considered private. The Court finds that the safe and effective management of the Fire Department is certainly a matter that concerns interested citizens and, as such, Phillips' speech was protected by the First Amendment.

The third prong of the analysis, termed a "*Pickering* balance,"  compels the Court to treat Phillips' allegations of retaliation as true and consider whether the public interest implicated by the adverse employment decision was more compelling than Phillips' interest in exercising his rights under the First Amendment.  See *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968).  Riley contends that "[t]here is a compelling governmental interest in protecting the public from individuals who have exhibited dangerous driving habits, particularly those drivers whose duties involve high speed operation of extremely large emergency response vehicles."[8]   The Court does not deny the fact that the City has a legitimate interest in maintaining the integrity of its affairs, fostering an atmosphere of public trust, protecting the public from potentially dangerous drivers, responsible supervision of public employees, and managing its automobile liability insurance rates.  None of these interests, however, are relevant to a *Pickering* balancing analysis.  The Fifth Circuit has held that where a defendant in a § 1983 suit fails to allege that a plaintiff's speech or association activities actually or potentially affected a government office's ability to provide services, there is no countervailing state interest to weigh against the employee's First Amendment rights.  *Vojvodich v. Lopez*, 48 F.3d 879,

---

[8] Dkt. #30, p.5.

7

886 (5th Cir. 1995). The critical comparison against a plaintiff's First Amendment rights is not the government's interest in firing an employee, but rather its interest in suppressing the plaintiff's First Amendment rights. Similar to the facts before the Fifth Circuit in *Vojvodich*, Riley has failed to allege that Phillips' speech or association actually or even potentially affected the Fire Department's ability to provide services. *See Vojvodich*, 48 F.3d at 886. Riley has proceeded as if Phillips' political activities were "wholly irrelevant," because he alleges that the adverse employment decision was based entirely on nonpolitical factors, such as Fire Department policy. *See id.* Accordingly, there is simply no countervailing state interest to weigh against Phillips' First Amendment rights.[9]

The fourth prong of the analysis articulated in *Harris* asks whether Phillips' First Amendment activities were "substantial or motivating" factors in Riley's decision to suspend his employment. See *Hitt*, 301 F.3d at 246. Riley offers two arguments undermining the necessary causative link between Phillips' association with the VFFA and speech against Riley and Riley's allegedly retaliatory decision to suspend him. First, Riley contends that the ultimate decision to suspend Phillips was made by Assistant City Manager Windwehen and City Manager Arnold after an independent investigation. The causal connection between a plaintiff's constitutionally protected activity and an adverse employment decision is broken if the defendant to whom the retaliatory motive can be attributed was not in fact the final decision-maker with regard to the adverse employment decision against the plaintiff. *Hitt*, 301 F.3d at 247-48. The final-decision maker cannot have relied upon the investigation or conclusions of the party to whom the retaliatory motive

---

[9] The Court notes that Riley and the City's interests are not irrelevant to the case at bar. They are relevant to the element of whether Phillips' protected activity was a substantial or motivating factor in the adverse employment action.

can be attributed. *Id.*  In his deposition, City Manager Arnold testified that the decision to suspend

Phillips was not final until he and Assistant City Manager Windwehen completed their independent

review.  Furthermore, Phillips does not allege that either Arnold or Windwehen shared Riley's

retaliatory motive or were simply "rubber stamping" his decision.  However, the "official decision-

maker" is not simply a person or body "authorized to review and approve, reverse, or modify an

adverse employment decision if an employee elects to appeal it." *Hitt*, 301 F.3d at 248.  "The mere

authority to review an employment decision is not decisive." *Id.*  Arnold and Windwehen only

became involved after Phillips chose to appeal his suspension.  Riley does not contest the fact that

his decision to suspend Phillips would have been final without review if Phillips had not invoked

the review process.[10]  The Fifth Circuit has made clear that a final decision-maker is not a party that

conducts an elective review in a "quasi-judicial capacity." *Id.*  Consequently, the Court finds that

Riley was the final decision-maker for purposes of determining causation under § 1983.

Second, Riley argues that, regardless of any possible retaliatory motive, he would have

suspended Phillips anyway based solely on his unprofessional behavior. Riley argues that "[he]

would have [suspended] Phillips' employment in the absence of any labor or speech."[11]  The Fifth

Circuit has explained that "even if [the court] assume[s] the exercise of protected first amendment

activity played a substantial part in the decision to terminate an employee, the termination is not

unconstitutional if the employee would have been terminated anyway." *Gerhart v. Hayes*, 217 F.3d

320, 322 (5th Cir. 2000) (quoting *White v. South Park Independent School Dist.*, 693 F.2d 1163,

---

[10] Riley even refers to Windwehen and Arnold's involvement as a "grievance process" and Phillip's "right of appeal." Dkt. #30, p.8.

[11] Dkt. #30, p.9.

1169 (5th Cir. 1982)). "The Constitution requires only that an employee be placed in no worse a position than if he had not engaged in the conduct." *White v. South Park Independent School Dist.*, 693 F.2d 1163, 1169 (5th Cir. 1982) (citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 285-87 (1977)).   According to Riley, his decision to suspend Phillips was based exclusively on evidence that Phillips had operated his motorcycle on a public roadway while intoxicated and was involved in an accident.  As evidence of Phillips' offense, Riley points to the fact that Phillips was charged by the police with DWI and later plead  guilty to reckless driving and public intoxication in lieu of a possible conviction for DWI.  In his deposition, Riley testified that he believed that the City Manager had mandated that any City employee who had driven while intoxicated while off-duty would have his or her City driving permit revoked for a period of three years.  Riley also testified that he believed that drunk driving constituted conduct unbecoming a firefighter, which was embarrassing to the Fire Department.   Riley thus asserts that his understanding was that drunk driving warranted a suspension of a firefighter's driving privileges, regardless of whether it ultimately resulted in a criminal conviction.

In response, Phillips offers facts to suggest that Riley would not have suspended him for three years but for Riley's retaliatory motive. Of the many facts alleged, the Court believes two in particular save Phillips from summary judgment.  First, Phillips presents evidence that could tend to suggest that Riley went to extraordinary lengths to "informally investigate" Phillips' accident and to make sure that he was not dealt with "leniently."  Although Riley contends that his inquiry into the Phillips' accident was motivated by rumors that Phillips was being dealt with leniently because of his status as a fireman, Riley fails to present any evidence that this sort of involvement with the investigation of another department was routine.  As an extraordinary measure, Riley's informal

involvement with the investigation into Phillips' accident could undermine Riley's contention that

he approached the situation with Phillips "by the book."

Second, anecdotal evidence of firefighters reporting to work intoxicated in Chris Hamrick's

("Hamrick") affidavit and Riley's Deposition could lead a reasonable juror to conclude that Riley

treated Phillips differently than other employees whose conduct violated the Fire Department

employee manual.  However, Riley objects to the admissibility of Hamrick's affidavit pursuant to

Federal Rules of Civil Procedure 26(a)(1)(A) and 37(c)(1), and also on the grounds that the

testimony is irrelevant, misleading, and prejudicial.  Riley argues that Hamrick was not properly

disclosed as a potential witness as required by Rule 26.  Riley also argues that the affidavit was not

even executed until July 19, 2004, more than four months after he filed his motion for summary

judgment.  Rule 37(c)(1) provides that a party who fails to disclose information required by Rule

26 "is not, unless such failure is harmless, permitted to use as evidence at a trial, at a hearing, or on

a motion any witness or information not so disclosed."  The factors the Court must weigh are the

following: (1) the importance of the evidence; (2) the prejudice to the opposing party of including

the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the

explanation for the party's failure to disclose.  *Tex. A&M*, 338 F.3d at 402.  After considering the

above factors, the Court will not exclude Hamrick's testimony under Rule 37(c)(1).

Riley also objects that Hamrick's testimony regarding Cody Miori ("Miori"), another City

firefighter, is irrelevant.  Hamrick's testimony suggests that Miori came to work intoxicated and

drove himself to work.[12]  The Court finds the facts set forth in Hamrick's affidavit to be relevant and

highly probative of whether Phillips was treated less favorably than other similarly situated Fire

---

[12] Plaintiff's Response, Exhibit R, Affidavit of Chris Hamrick.

Department employees. Contrary to Riley's assertion, Hamrick's testimony is not irrelevant simply because he does not explain the basis of his opinion that Miori was intoxicated. Nor does Hamrick have to prove that Riley was "aware of Miori's alleged drunkenness" or that Riley "took no action in the matter" for the evidence to be relevant. Any gaps in Hamrick's testimony go to its weight, not its admissibility. The Court will not exclude Hamrick's affidavit testimony on relevance grounds.

Finally, Riley argues that Hamrick's testimony should be stricken because it is factually misleading and prejudicial. To demonstrate the nature of the "misleading and prejudicial" nature of Hamrick's testimony, Riley presents affidavit testimony regarding the manner in which Miori's situation was handled.[13] With this testimony, Riley purports to demonstrate that Miori was not exactly treated more leniently than Phillips. According to Riley, Miori submitted to a breathalyser "and/or" urine test at the Fire Department. Riley does not report the results of that test. However, at some unknown point after he submitted to tests at the Fire Department, Miori was driven to Detar Hospital by a another firefighter where he submitted to breath and urine tests. The result from these tests revealed that Miori had a blood alcohol level of .022 gm/dl.[14] Riley also states that the test result is below the City's automatic grounds-for-termination level of .04 gm/dl. Riley asserts that though he knew Phillips was driving while intoxicated, he is not aware of any information suggesting Miori operated any vehicle while intoxicated (i.e., with a blood alcohol level of .08 gm/dl or more). Despite Riley's asserted lack of knowledge, the Court cannot exclude Hamrick's

[13] Defendant Riley's Objections to Evidence and Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (Dkt. #49) ("Reply"), Exhibit F, Affidavit of Vance Riley.

[14] *Id.*

12

affidavit testimony regarding Miori.  Again, any such arguments go to weight, not admissibility.

Finally, Riley argues that Hamrick's testimony with regard to Richard Cain ("Cain"), a past City firefighter, is inadmissible hearsay.  The Court agrees.  In relevant part, Hamrick's affidavit states "Richard Cain, a past Victoria City Firefighter *told me* that he had two or three DWI . . . convictions before he was hired by the Victoria Fire Department as a firefighter" (emphasis added).  This statement is clearly offered to prove that Cain had three DWI convictions before being hired.  It is also made by an out-of-court declarant.  Such testimony is hearsay and does not fall under any exceptions to the hearsay rule.  Accordingly, Hamrick's testimony regarding Cain is inadmissible under Federal Rule of Evidence 802, and will not be considered by this Court in its summary judgment ruling.

The Court finds that Hamrick's testimony about Miori combined with Riley's testimony that another employee, Shawn Hoff, was not disciplined after rumors circulated that Hoff reported to work intoxicated[15] could lead a reasonable juror to conclude that Phillips was treated more harshly than other similarly situated employees.  Phillips asserts that this evidence suggests that the City and Riley meted out inordinately harsh punishment to him while consistently treating other City and Fire Department employees with leniency.  Given the factual disputes that surround these allegations, the Court cannot conclude as a matter of law that Riley would have suspended Phillips for three years in the absence of his labor affiliation and protected speech.

In sum, Phillips has produced evidence sufficient to establish the prima facie elements of his retaliation claim.  Therefore, in the absence of a finding that Riley is entitled to qualified immunity, summary judgment cannot be granted.

---

[15] Plaintiff's Response, Exhibit A, pp. 110-111.

## II.      Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from

liability for civil damages insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known.." *Harlow v. Fitzgerald*, 457

U.S. 800, 818 (1982)*; See Mendenhall v. Riser,* 213 F.3d 226, 230 (5th Cir. 2000).  This doctrine

of "qualified immunity" reconciles the need to compensate individuals whose rights have been

violated with the concern that personal liability will inhibit public officials in the discharge of their

duties. *See Johnston v. City of Houston*, 14 F.3d 1056, 1059 (5th Cir. 1994).  According to the Fifth

Circuit,

> Qualified immunity protects against novel theories of statutory or Constitutional
> injury–any purported harm must stem from rights clearly established under law at the
> time of the incident, and the contours of that right must be sufficiently clear such that
> a reasonable officer would understand that his actions were violative of the rights at
> issue.  *See* [*Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987).]  Thus, the
> qualified immunity standard "gives ample room for mistaken judgments" by
> protecting "all but the plainly incompetent or those who knowingly violate the law."
> [*Malley v. Briggs,* 475 U.S. 335, 343 (1986).]

*Mendenhall*, 213 F.3d at 230.  "If reasonable public officials could differ on the lawfulness of the

defendant's actions, the defendant is entitled to qualified immunity."  *Johnston*, 14 F.3d at 1059

(citing *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1183 (5th Cir. 1990), *abrogated on other*

*grounds by Martin v. Thomas*, 973 F.2d 449 (5th Cir. 1992)).

Application of the qualified immunity defense requires a two-step analysis.  *See Salas v.*

*Carpenter,* 980 F.2d 299, 305 (5th Cir. 1992).  First, the court must determine whether the plaintiff

has alleged facts indicating the violation of a constitutional right clearly established at the time of

the violation.  *Id.* at 305.  A right is "clearly established" when its contours are clear enough for a

reasonable official to understand that what he is doing violates that right. *Id.* at 310 (citing *Anderson*

14

*v. Creighton*, 483 U.S. 635, 640 (1987)). If the plaintiff satisfies this standard, the court must evaluate whether the defendant's conduct was objectively reasonable. *See Spann v. Rainey,* 987 F.2d 1110, 1114 (5th Cir. 1993); *Salas*, 980 F.2d at 305-06.

### A. Clearly Established Right

Riley argues that Phillips has failed to establish his burden of proving that he violated clearly established law. Phillips contends that the rights to be free from retaliation by a state employer for exercise of one's right to free speech and free association were clearly established at the time he was suspended by Riley. According to the Fifth Circuit, "[s]ince 1983, the year the Supreme Court decided Connick, government employers have known that, unless their interest in efficiency at the office outweighs the employee's interest in speaking, they cannot [discipline] their employees for making statements that related to the public concern." *Kennedy v. Tangipahoa Parish Library Bd. of Control*, 224 F.3d 359, 37 (5th Cir. 2000). The Court has already found that the "letter of no confidence" grievance filed by Phillips on behalf of the VFFA was a matter of public concern. As such, Phillips had a clearly established right to file such a grievance without disciplinary retaliation.

Similarly, the Fifth Circuit has held that the First Amendment "right of association encompasses the right of public employees to join unions and the right of their unions to engage in advocacy and to petition government in their behalf." *Boddie*, 989 F.2d at 748. In *Boddie*, on facts identical in many respects to those in the present case, the Fifth Circuit held that a disciplinary action taken against a fireman in retaliation for his association with a union violated clearly established law. *Boddie*, 989 F.2d at 749. Therefore, the Court finds that Phillips has alleged violations of two clearly established constitutional rights.

### B.      Objectively Reasonable Conduct

The second question for the Court under the qualified immunity analysis is whether Riley's decision to suspend Phillips was objectively reasonable in light of clearly established constitutional law. *Hayter v. City of Mount Vernon*, 154 F.3d 269, 274 (5th Cir. 1998).  Riley incorrectly applies the facts at bar to this question by asking the Court to consider whether Riley's determination that he was entitled to suspend Phillips for driving on a public road while intoxicated was objectively reasonable.  However, the issue is not whether a reasonable official could have believed that Phillips could properly be suspended for his driving infractions, but whether a reasonable official could have believed it was reasonable to suspend Phillips for his constitutionally protected activities.

In light of the Fifth Circuit's decision in *Boddie*, the Court is of the opinion that the law was so clearly established in the Fifth Circuit that no reasonable public official would have believed it was lawful to suspend Phillips for his association with and/or speech on behalf of the VFFA. Accordingly, Riley is not entitled to qualified immunity.

### III.      State Common Law Claim

Phillips has also asserted a claim pursuant to TEX. GOV'T CODE ANN. § 617.004 (2004), which states that "[a]n individual may not be denied public employment because of the individual's membership or nonmembership in a labor organization."  As discussed above, Phillips has provided evidence sufficient to create genuine issues of material fact as to whether the adverse employment action Riley took against him was motivated by his First Amendment activities.  Accordingly, Phillips' state common law claims must survive Riley's motion for summary judgment.

**IV.    Official Immunity from State Common Law Claim**

Official immunity in Texas is essentially the same as qualified immunity under federal law. *Hart v. O'Brien*, 127 F.3d 424, 450 (5th Cir. 1997), *abrogated on other grounds by Spivey v. Robertson*, 197 F.3d 772 (5th Cir. 1999) (citing *Lancaster v. Chambers*, 883 S.W.2d 650, 656 (Tex. 1994)).  The technical distinction between the two being merely that official immunity requires the officer to act in good faith, and qualified immunity requires that the officer act in accordance with clearly established law. *Id.*  Accordingly, for the same reasons discussed above, Riley is not entitled to summary judgment on Phillips' claims against him.

## Conclusion

For the reasons explained above, the Court DENIES Riley's Motion for Summary Judgment (Dkt. #29).

It is so ORDERED.

Signed this 30th day of March, 2006.


_____
JOHN D. RAINEY
UNITED STATES DISTRICT JUDGE